[Crim. No. 5400. Second Dist., Div. Three. Oct. 27, 1955.]

THE PEOPLE, Respondent, v. NILES ROBERT BOUD, Appellant.

Albert C. S. Ramsey for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant Boud and one O'Hara were charged with violation of section 286 of the Penal Code (sodomy). In an amended information, O'Hara was charged with violation of said section 286 and with violation of section 288a of the Penal Code. He pleaded guilty to the charge of violation of section 288a. In the trial of Boud, a jury was waived. He was adjudged guilty. Probation

was granted and proceedings were suspended. Boud appeals from the order granting probation.

Appellant contends that the conviction is against the law and the evidence in that the corpus delicti was not established; the evidence did not, beyond a reasonable doubt, establish penetration; the evidence disclosed that the defendant was an unconscious victim of any attempted act of sodomy; and the law should be construed as making the aggressive, active participant the violator of the law.

O'Hara, called as a witness by the People, testified that he was in the Navy; on September 20, 1954, after 2 a. m., he was walking on a street in Long Beach on his way back to his ship, and the defendant, who was alone in a large automobile, asked him if he was going to the landing and if he wanted a lift to the landing; O'Hara got into the automobile, and defendant drove to a place outside a naval base and stopped the automobile. In his further testimony he related facts which, if believed, were sufficient to prove that defendant violated said section 286 as alleged. It is not necessary to state the details as related by him. On cross-examination, he said that during the night, prior to getting into defendant's automobile, he (O'Hara) had been in several bars, had several drinks of intoxicating liquor, was "pretty groggy," was in a daze of intoxication, and was drunk; that it was possible there was no penetration.

Officer Samuelson testified that on September 20, 1954, about 2:45 a. m., he and Officer Wolfe, who were in an automobile, saw defendant and O'Hara riding in a 1952 Cadillac automobile; the officers kept the automobile under observation; about 2:50 a. m. the automobile stopped near a barracks; the officers parked their automobile about 35 feet back of the Cadillac; there was another automobile between the officers' automobile and the Cadillac; he (Samuelson) approached the Cadillac on the right side thereof, and Officer Wolfe approached it on the left side; as they approached the automobile they were in a crouched position; he (Samuelson) flashed a light into the front seat and saw defendant and O'Hara lying in the front seat on their left sides, with their heads toward the left door; O'Hara's pants were down around his knees; defendant's pants were down to the thigh area; O'Hara was up against defendant; when the light flashed into the car O'Hara moved back, and the witness (Samuelson) saw the penis of O'Hara as it came out of the rectum of defendant; when the witness flashed the light he saw that

defendant's right hand was spreading the right side of defendant's buttocks upward; defendant and O'Hara "had the indication" that they had been drinking, but they were not under the influence of liquor; at the police station the officers asked defendant if this was the first time he had participated in an act of sodomy; he replied, "Well, yes, this is."

Officer Wolfe testified that when the other officer flashed the light into the car he (witness) saw that defendant's pants were around his knees; defendant was conscious; when the witness said that he was a police officer, the defendant said "Oh," or something like that; then defendant and O'Hara began adjusting their clothing; the witness asked defendant to get out of the car; defendant finished buckling his belt and adjusting his pants, and then got out; defendant said he lived in Garden Grove or Bell Gardens and he owned a liquor store there; defendant asked if something could be done about the arrest, and he offered the witness all the money he had; defendant then counted his money, which was $20, and he said he would write a check or they could go some place and get a check cashed; O'Hara had been drinking heavily; there was an odor of alcohol on defendant's breath, but he was not under the influence of liquor; the witness did not see defendant participating in the crime against nature; at the police station the witness asked defendant if that was the first time he had committed an act of sodomy; he replied, "Well, I guess it is."

Defendant testified that in the afternoon and night preceding the arrest he went to many bars and had many drinks of intoxicating liquor; he was feeling the drinks and he started home; he met O'Hara, but he could not tell exactly where he met him; defendant did not have any remembrance of O'Hara getting into the car; both of them were pretty drunk; he drove to the Naval Base and stopped at a gate to let O'Hara out, but O'Hara would not get out; he believed that O'Hara "was passed out or unconscious"; O'Hara was slumped down in the front seat; then defendant drove on, but he could hardly see the road; he pulled over to the side because he could not drive farther and he wanted to sleep; then he lay down in the front seat and went to sleep and passed out, and that is the last he remembered until someone said, "Police officers"; his pants were up in right position when he went to sleep; he had no recollection of any conversation regarding money; the officers asked him whether he

had done this before; he replied that this was the first time he had been arrested, let alone doing anything like this.

A bartender, called as a witness by defendant, testified that he had known defendant about 13 years; he had seen defendant at the bar between 4 and 6 p. m. on September 19; he served defendant five or six martinis; then the witness refused to serve him any more, because defendant had plenty; defendant was then under the influence of liquor.

Appellant's argument, in support of his contention that the corpus delicti was not established, is that the evidence did not establish beyond a reasonable doubt that there was penetration. ■ "The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt." (*People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911].) The testimony of O'Hara and Officer Samuelson was sufficient, if believed, to prove penetration.

■ The question as to whether defendant was unconscious when the alleged act of sodomy occurred was a question of fact for the determination of the trial judge. There was substantial evidence that he was conscious. The court could infer from the manner in which defendant drove his automobile, and from the testimony as to the manner in which defendant was using his right hand when the light was flashed into the car, and from the statements and conduct of defendant after the arrival of the officers, that defendant had not been unconscious immediately or at all before the officers arrived. Immediately after the officers arrived defendant gave responsive answers to questions, adjusted his clothing, got out of the automobile, offered to pay money, counted his money, and talked about writing a check.

■ Appellant also contends in effect that section 286 is not sufficiently definite and certain to include the person who is the pathic subject or victim. In *People* v. *Featherstone*, 67 Cal.App.2d 793 [155 P.2d 685], wherein the defendant was charged with violation of section 286, a question was whether it was necessary that the testimony of the complaining witness (the alleged victim) be corroborated. Defendant therein contended that the witness was an accomplice and that there was no corroboration of his testimony. The court said (p. 795) that the uncontradicted testimony showed that the witness was imposed upon by defendant, that there was no evidence that the witness encouraged defendant, and that the evidence disclosed that the witness

objected and refused to take part in the act. The court also said (p. 796): "Undoubtedly, where the persons participating in an offense of this character do so without compulsion each is an accomplice of the other, and is liable to prosecution as such." It was held therein that the witness was not an accomplice and that corroboration of his testimony was not necessary. In the present case, as above indicated, the evidence was legally sufficient to prove that defendant was not unconscious, and to prove that he, without compulsion, intended to and did actively participate in the act. The trial judge stated that he was convinced that the defendant was more the aggressor than was O'Hara. This contention to the effect that section 286 is too vague and uncertain is not sustained.

Appellant, in arguing that penetration was impossible, states that appellant had undergone an operation. After making that statement he cites certain pages and lines of the reporter's transcript. That citation shows that: counsel for defendant asked him if he had a letter from a doctor in Pomona; defendant replied in the affirmative; counsel for defendant asked him if he got the letter after he had discussed with the doctor a rectal operation that defendant had; defendant replied in the affirmative. His counsel offered the letter in evidence. An objection to the letter, on the ground that it was hearsay, was sustained. The ruling was correct. Counsel for defendant also refers to, and quotes from, a report made by a doctor who was appointed by the court (apparently a doctor who was appointed in connection with proceedings as to sexual psychopathy). Those proceedings were not a part of the trial and were had after the defendant had been adjudged guilty of the offense charged. The report is not a part of the record on appeal.

The evidence was sufficient to support the adjudication that defendant was guilty as charged.

The order granting probation is affirmed.

Shinn, P. J., and Ashburn, J. pro tem.,* concurred.